34 N.Y.2d 499 (1974)
In the Matter of Harold A. Seidenberg, Appellant,
v.
County Court of the County of Rockland et al., Respondents.
In the Matter of Marvin Gess, Appellant,
v.
County Court of the County of Rockland et al., Respondents.
In the Matter of Jacob Pesner, Appellant,
v.
County Court of the County of Rockland et al., Respondents.
Court of Appeals of the State of New York.
Argued June 11, 1974.
Decided July 15, 1974.
Harold A. Seidenberg, appellant in person.
Arnold D. Roseman and Aaron Nussbaum for Marvin Gess, appellant.
Arnold Becker, Arthur Moskoff and Robert D. Alexander for Jacob Pesner, appellant.
Robert R. Meehan, District Attorney (Thomas E. Urell of counsel), for respondent, pro se.
Louis J. Lefkowitz, Attorney-General (Lillian Z. Cohen and Samuel A. Hirshowitz of counsel), for respondent Justices.
Judges JASEN and RABIN concur with Judge STEVENS; Chief Judge BREITEL concurs in the opinion by Judge STEVENS in a separate opinion; Judge JONES dissents and votes to reverse in a separate opinion in which Judges GABRIELLI and WACHTLER concur.
*502 STEVENS, J.
The single question presented by these cases is whether a writ of prohibition will lie on the ground advanced *503 by the appellants that the Additional Grand Jury was illegally constituted. The appellants urge that the Administrative Judge, Judge McCULLOUGH, lacked the power or the jurisdiction to order the impaneling of an Additional Grand Jury for a period of four months or four terms or for any period longer than the coexisting and coterminating terms of the County Court.
On November 20, 1972, Judge JOHN A. GALLUCCI, Senior Judge of the Rockland County Court, designated the following terms for Grand Juries in the year 1973: the first Tuesday of January; the first Monday of March; the first Tuesday of May; the first Monday of July; the first Tuesday of September; and the first Monday of November. It will be noted that each Grand Jury was for a term of two months and the days for the commencement of the terms Tuesdays and Mondays.
On January 9, 1973, Judge GALLUCCI addressed a letter to Judge McCULLOUGH, notifying him, "it is essential that an additional grand jury be drawn and empanelled to cover the period February 1 to May 31, 1973, inclusive." Judge GALLUCCI requested Judge McCULLOUGH to take the necessary steps, pursuant to subdivision (b) of section 693.3 of the Administrative Rules of the Appellate Division, Second Department (22 NYCRR 693.3 [b]), to have an order entered so that the Additional Grand Jury could be drawn and impaneled for the period stated "to sit concurrently with any other grand jury that has already or will hereafter be drawn and impanelled." It should be noted that February 1 and May 31, the commencement and terminal dates, are Thursdays.
Judge McCULLOUGH responded by letter dated January 11, 1973, "Pursuant to Section 693.3, subd. b, 22 NYCRR, permission is hereby given to you to draw and empanel an additional grand jury to cover the period February 1 to May 31, 1973, inclusive, provided however that the drawing of this additional grand jury does not exceed the numerical limitation contained in Section 693.2 (5)." The order of Judge McCULLOUGH, dated January 18, 1973, reads in pertinent part: "ORDERED, that pursuant to the statutes and rules of the Appellate Division, Second Judicial Department, in such cases made and provided, I do hereby designate and direct that an additional Grand Jury shall be drawn, summoned and impaneled in the manner prescribed *504 by law for the February, March, April and May, 1973 Terms of the County Court of the County of Rockland for the period commencing February 1st, 1973 and ending May 31st, 1973, both dates being inclusive, and for such further terms of the County Court as it may be required and extended."
On February 1, 1973, as reflected in the minutes of the County Clerk, Judge GALLUCCI opened court and addressed the potential grand jurors, advising them that it was expected "that this Grand Jury would be sitting a minimum of two days a week and a minimum of two months, with a possibility of four months."
CPL 210.20 provides that after arraignment upon an indictment, the superior court may, upon motion of the defendant, dismiss an indictment on the ground that "(c) The grand jury proceeding was defective, within the meaning of section 210.35". The relevant provision of CPL 210.35 states that "A grand jury proceeding is defective within the meaning of paragraph (c) of subdivision one of section 210.20 when: 1. The grand jury was illegally constituted".
Section 214 of the Judiciary Law provides in part "the appellate divisions shall supervise the administration and operation of the courts in their respective departments * * * Each appellate division shall, with respect to the courts in its department, be vested with (1) the administrative powers and duties necessary to effectuate the standards and policies established by the administrative board pursuant to section two hundred twelve * * * and (2), subject to the limitations of the constitution and the provisions of law hereafter enacted specifically otherwise providing, all administrative powers and duties vested pursuant to any provision of law in any judicial or non-judicial personnel of the courts in its department." Section 216 enumerates additional powers and duties of each Appellate Division with respect to the courts in its department and provides that they "shall have power to: 1. Adopt, promulgate, supplement, rescind and modify rules and orders necessary to implement its powers and duties hereunder including the supervision of the administration and operation of the courts in its department, not inconsistent with any statute hereafter adopted and the standards, policies, rules and orders of the administrative board." The section further provides that the *505 Appellate Divisions shall have the power to "2. Delegate to the presiding justice or any administrative judge any administrative power and duty possessed by it, as well as authority to vary or modify rules and orders adopted under this section". Section 217 of the Judiciary Law gives each Appellate Division the power to designate "one or more of the judges or justices of the courts in its department as administrative judge or judges, as it deems necessary or convenient for the administration and operation of the courts in its department."
CPL 190.10 mandates that the Appellate Division of each judicial department shall adopt rules "governing the number and the terms for which grand juries shall be drawn and impaneled by the superior courts within its department; provided, however, that a grand jury may be drawn and impaneled for any extraordinary term of the supreme court upon the order of a justice assigned to hold such term." The duration of the term of the Grand Jury is set forth in CPL 190.15. "1. A term of a superior court for which a grand jury has been impaneled remains in existence at least until and including the opening date of the next term of such court for which a grand jury has been designated." (Emphasis supplied.) 22 NYCRR 693.3 (b), in pertinent part provides, "for each term of the County Court in each county designated by the Appellate Division as one for which a grand jury shall be drawn, at least one grand jury must be drawn and impaneled. Additional grand juries may be drawn and impaneled upon the order of the administrative judge having jurisdiction over the courts in such county."
Section 190-b of the Judiciary Law provides in essence that where a County Court has jurisdiction of an action or special proceeding it possesses the same jurisdiction, power, and authority in and over the same, that the Supreme Court possesses in a like case, and that the County Judge possesses the same power and authority in such action or special proceeding as a Supreme Court Justice would possess in a like action or special proceeding. Section 190-c provides that "1. The county judge must, from time to time, appoint the times and places for holding terms of his court. 2. At least two terms, for the trial of issues of law or of fact, must be appointed to be held in each year. 3. Each term may continue as long as the county judge *506 deems necessary." Those sections were apparently in chapter 35 of the Laws of 1909 formerly section 190 (L. 1951, ch. 833). Other sections were added by later sessions of the Legislature. Sections 214, 216 and 217 of the Judiciary Law were added by chapter 684 of the Laws of 1962 and are subsequent in time to the sections dealing with the powers of the County Court Judge. All sections of the Judiciary Law are to be read, if possible, in harmony.
It appears clear that the Appellate Division, having the power to make rules and regulations governing the administration of the courts, could, under the statute designate Administrative Judges and vest them with such powers as the Appellate Division could exercise where such powers would not be contradictory to existing law.
It should be noted that no prejudice or damage is claimed by any of the appellants, nor do they claim that any of their constitutional rights were impinged or violated. Their basic argument is that the Grand Jury was illegally constituted. In the brief of appellant Seidenberg it is stated, "We believe the law is clear that a Grand Jury in the County of Rockland could only be impanelled for a period of two months and the attempt by the Administrative Judge to impanel a jury for a period of four months violates the law." Such appellant concedes that there could have been an impaneling of the Grand Jury for a term of two months, apparently recognizing the custom and practice in Rockland County has always been to impanel a jury for such period.
The problem in this case arises from the language used in designating a term longer than one month and in specifying the February, March, April and May terms, not from the mere fact of the impaneling of the Special Grand Jury.
A term generally is a period of fixed or prescribed duration, a space or time during which a court holds a session for the transaction of business. It begins at a time appointed by law and generally continues in the discretion of the court consistent with the law. The order here was for the purpose of the impaneling of the Special Grand Jury for a fixed period. It merely divided the period into shorter identifiable periods by use of the specified months, followed by the word "terms". It seems to me that we have to look to the underlying request, to the *507 authorization given, and to the fact that the County Judge deemed it necessary that the period designated be from February to May. Under subdivision 3 of section 190-c of the Judiciary Law, each term of court may continue as long as the County Judge deems necessary.
In Matter of McClure v. County Ct. of County of Dutchess (41 A D 2d 148) it was held that an order extending the life of the Grand Jury was void because the application for the extension was made by the District Attorney alone and not by both the District Attorney and the Grand Jury as required by statute (CPL 190.15, subd. 1) and, therefore, the order was jurisdictionally defective. In that case the Grand Jury also had no unfinished business before it. In the case before us it appears that the Additional Grand Jury was in continuous session throughout the period for which it had been impaneled. Section 6 of article I of the State Constitution provides for the creation and operation of the Grand Jury, including the power of Grand Juries to inquire into willful misconduct in office of public officers. In his Commentary to CPL 190.10 (McKinney's Cons. Laws of N. Y., Book 11A, CPL 190.10), Professor Denzer notes that the CPL section adopts a more flexible administrative approach than was possible under the old Criminal Code. "On the theory that the respective Appellate Divisions are more familiar than the Legislature with the precise requirements for grand juries of each of the counties within their departments, authority to prescribe the number, frequency and time of drawing and impaneling such grand juries is delegated to the Appellate Divisions." Professor Denzer notes also that CPL 190.15 was in part designed to overcome a technical deficiency by categorically extending the term of each Grand Jury to the commencement of the next one. The term "at least" in CPL 190.15 seems to establish a minimum base or a floor for a Grand Jury rather than impose a maximum limitation upon its existence.
In People v. Stern (3 N Y 2d 658) a Grand Jury had been impaneled, as an Additional Grand Jury, for the June, 1955 Term of the County Court. However, its life was extended by successive orders procured by the District Attorney and ultimately, by an informal order and proclamation made by the court on its own motion, its term was extended to June 30, 1956. *508 During the original term of the County Court, the investigation of the Grand Jury did not relate to the subject matter of the indictments involved in People v. Stern. The question was whether it possessed the power to find and present indictments against the defendants, charging them with a violation of section 1141 of the Penal Law. The court noted that the Grand Jury is considered an arm or adjunct of the court for purposes of supervision, but, insofar as its jurisdiction is concerned, it was an independent body and was not dependent upon the jurisdiction of the court for which it was impaneled, unless there was a clear statutory pronouncement to the contrary. There, of course, the Grand Jury had been duly constituted and had functioned continuously, since its inception.
The Grand Jury was not confined in all cases to the jurisdiction of the court to which it was impaneled. The extended term of the County Court with which the jury sat was held competent to receive the indictment. In People v. Kovacs (72 Misc 2d 39) where the court, by order dated December 29, 1971, extended the term of the November-December 1971 Grand Jury "`until further order of this Court, to permit the Grand Jury to complete the investigations now pending before that body'", defendants sought dismissal of the indictment contending that the order did not comply with CPL 190.15 in that the Grand Jury was extended without date and not to a specified future date. The court (JIUDICE, J.), in rejecting that argument, felt that the defendants' contention was highly technical and that the purpose of the change in the statute was to provide a cut-off date for the Grand Jury's terms. The court expressed the view that CPL 190.15 "performs the function of preventing a Grand Jury to go on literally forever." The court also rejected the argument that the failure of the Grand Jury to join with the District Attorney in the petition for an extension voided the order. It considered the argument insignificant and without merit. The court observed, that, if the technicality complained of had resulted in a change in the makeup of the Grand Jury so as to deprive it of its particular character as a Grand Jury in a constitutional sense, the court would have to take note of the fact, and then went on to say "When, however, a defect is not of such a character and a defendant may be held to answer a subsequent indictment without invading any of his constitutional *509 rights, then the question is one of procedure only. The court believes the over-all intention of the CPL was to discourage technical defenses to indictments which do not affect the merits of a particular case [citations omitted]".
In Lee v. County Ct. of Erie County (27 N Y 2d 432, 437) an article 78 proceeding in the nature of prohibition, as is the case before us, the court noted, "it is equally true that `function of the writ * * * [is] not merely to restrain an unwarranted assumption of jurisdiction, but also to restrain an inferior court from exceeding its authorized powers in a proceeding over which it has jurisdiction' * * * the writ is an extraordinary remedy which `does not issue where the grievance can be redressed by ordinary proceedings at law or in equity or merely to prevent error which may be readily corrected on appeal. [Citations omitted.]'" There is a question whether an article 78 proceeding in the nature of prohibition is proper here. In this case, there has to be a balancing of interests, as well as a consideration of orderly procedure in the courts. Given a reasonable construction to what was done here, the jury being impaneled and remaining continuously in session, operating in a court which had jurisdiction and the power to hear it and supervise its operations, a mere technicality should not invalidate its acts. This case may be distinguished from cases such as Martinelli v. City Clerk of City of Yonkers (29 N Y 2d 274) where, by the explicit terms of the statute, it was necessary that affirmative action be taken in order to designate two official newspapers for the city.
The Grand Jury is an accusatory body screening and weighing the evidence to determine whether a charge is warranted or whether there is nothing of substance which warrants the returning of an indictment. It protects the innocent as well as sets in force the mechanism by which the guilty might be brought to answer the charges. It does not take away from the accused any rights. It is an arm of the court and subject to its supervision. Yet its powers are set forth by statute and, within the scope of the statute, cannot be curtailed by the court. If properly constituted under the aegis of a court of competent jurisdiction, the mere fact that the term embraced was not one which is customarily or perhaps, even normally used, should not serve to invalidate its actions. The law provides that it may receive *510 only legal evidence and it only finds an indictment when all the evidence taken together is such as in its judgment, if unexplained, would warrant a conviction by a trial jury. The defendant is never in jeopardy nor are his rights in jeopardy by the simple proceeding before the Grand Jury.
CPL 190.15 seems to relate, as the Attorney-General urges, to the extension of existing Grand Juries and does not, and is not intended to, limit the original impaneling of Grand Juries. Nor does CPL 190.10 contain a limitation on the power of the Administrative Judge to determine when or for how long a Grand Jury shall be originally impaneled. Here the request came as it should have from the Senior County Judge. At the very least, in accordance with the custom and practice in Rockland County, the Grand Jury would have had a valid existence for February and March, two terms, in accordance with the customary practice. There was no statutory limitation that prevented four months as a fixed period.
Accordingly, the judgments in each case should be affirmed, without costs.
Chief Judge BREITEL (concurring).
I agree with the excellent analysis in the opinion of Judge STEVENS, and therefore subscribe to his opinion. Despite grave doubts about the wisdom of justifying the procedure followed only because the irregularities are technical and there is no prejudice to the petitioners, I vote to affirm. In doing so, I agree with the dissenters that it is perilous to legal institutions and the rule of law to allow erosion of formal principles; but fine distinctions which fall short of impermissible erosion are not new to the burden of adjudication.
JONES, J. (dissenting).
I would reverse the order of the Appellate Division, concluding as I do that the Additional Grand Jury which returned the indictments in these cases was illegally constituted and that the indictments must accordingly be dismissed. I agree with the views set forth in the dissenting opinion of Mr. Justice MUNDER at the Appellate Division.
No one questions that this Additional Grand Jury was not impaneled in literal compliance with the applicable provisions of statute and court rule. The sole issue is whether, in that circumstance, indictments by this Grand Jury may nonetheless *511 somehow be salvaged because it can be said that the conduct of the Grand Jury proceedings was not unreasonable per se and that the rights of appellants were not prejudiced. I cannot agree with the analysis adopted by the majority which I find strained.
I fully recognize the pragmatic disadvantages of a decision which we are told would result in the nullification of some 19 indictments, as to some of which intervening events may have precluded representation to a properly constituted Grand Jury. Rules become truly significant, however, when to observe them brings cost or burden.
In my view, as Judge DESMOND wrote in dissent in People v. Prior (294 N.Y. 405, 418): "We deal not with technicalities but with the integrity of a public judicial institution [the Grand Jury], probably the oldest in existence, and with the protection thereunder of important private rights."
Any contention that an irregularly constituted Grand Jury becomes illegal only if those indicted can demonstrate individual prejudice is an invitation to endless litigation in what could become a myriad of cases to delineate the boundary between material and immaterial prejudice, with all of the disadvantages which attend unpredictability.
In a day when the rules and regulations which have both structured society and facilitated its activities are under assault from so many quarters I confess to great discomfort that our court should lend its auspices to the counsels of expediency on an issue of such basic jurisdictional importance as the constitution of the Grand Jury.
In each case: Judgment affirmed.